UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 4:22-CR-067 |
| v. ) | |
| ) | PLEA AGREEMENT |
| ROGER PAUL BRADFORD ) | |
| also known as, Paul Bradford, ) | |
| ) | |
| Defendant. ) | |

The United States of America (also referred to as "the Government") and the Defendant, ROGER PAUL BRADFORD, also known as Paul Bradford, and Defendant's attorney, enter into this Plea Agreement.

**A.   CHARGES**

1.   <u>Subject Offenses</u>.  Defendant will plead guilty to Count 1 of the Indictment, that is conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349.

2.   <u>Charges Being Dismissed</u>.  If the Court accepts this Plea Agreement, Count 2 of the Indictment, that is, Attempted Obstruction of Official Proceeding, in violation of Title 18, United States Code, Section 1512(c)(2), will be dismissed at the time of sentencing   Defendant understands that, even though Count 2 will be dismissed, all relevant conduct including the conduct that supported the charge in Count 2 will be considered by the Court at the time of sentencing.

1

**B.     MAXIMUM PENALTIES**

3.     <u>Maximum Punishment</u>.   Defendant understands that the crime to which Defendant is pleading guilty to in Count 1 carries a maximum sentence of 20 years in prison; a maximum fine of $250,000; and a term of supervised release of not more than 3 years.   A mandatory special assessment of $100 per count must also be imposed by the Court.

4.     <u>Supervised Release--Explained</u>.   Defendant understands that, during any period of supervised release or probation, Defendant will be under supervision and will be required to comply with certain conditions.   If Defendant were to violate a condition of supervised release, Defendant could be sentenced up to two (2) years in prison, without any credit for time previously served.

5.     <u>Detention</u>.   Provided that Defendant does not violate any conditions of Defendant's pretrial release, and does not appear to be mentally at risk to harm himself or any other person, the Government agrees to recommend that Defendant may remain on pretrial release pending imposition of sentence.

**C.     NATURE OF THE OFFENSE -- FACTUAL BASIS**

6.     <u>Elements Understood</u>.   Defendant understands that to prove the offense alleged under **Count 1 (conspiracy to commit wire fraud)**, the Government would be required to prove beyond a reasonable doubt the following elements:

  (a)     Two or more persons reached an agreement to commit wire fraud;

  (b)     Defendant voluntarily and intentionally joined in the agreement;

and

(c) At the time Defendant joined the agreement, Defendant knew the purpose of the agreement.

7. <u>Factual Basis</u>.  As a factual basis for Defendant's plea of guilty, Defendant admits the following:

(a) Vermeer Corporation ("Vermeer") is a manufacturer of industrial agricultural equipment, with its headquarters, and multiple manufacturing plants located in Pella, Iowa, which is in the Southern District of Iowa.

(b) At all relevant times, Viorel Draghia ("Draghia") owned, controlled, and operated Draghia Painting & Contracting Co. ("Draghia Contracting").  Through Draghia Contracting, Viorel Draghia sought and obtained contracts to complete work on construction projects.

(c) Defendant knew Viorel Draghia and had known Draghia for several years prior to 2019.  Defendant and Draghia both had principal places of residence in or around Northern Virginia.

(d) In January 2019, Vermeer hired Defendant to oversee certain Vermeer construction projects, including projects at its Pella campus.  Defendant was an employee of Vermeer and his title was Director of Construction.  In January 2019, Defendant informed Draghia of Defendant's new employment at Vermeer.  On multiple occasions from January through October 2019, Defendant sent confidential Vermeer construction project-related information from Defendant's Vermeer email account to Defendant's personal email account and then Defendant forwarded said information to Viorel Draghia via email.  These emails included information that should not be provided to a contractor, such as Draghia, who might seek to bid for work on Vermeer projects.

(e) Beginning in or about January 2019 and continuing until at least on or about October 29, 2019, Defendant voluntarily and intentionally had an agreement with Viorel Draghia, to commit wire fraud against Vermeer by agreeing with each other that Defendant would direct construction contracts at Vermeer to

(f) One project that Defendant was overseeing for Vermeer was the construction of the "Vermeer EcoCenter" building in Pella. Defendant and Viorel Draghia worked together to formulate proposals, or "bids", for Draghia Contracting to complete certain work on the Vermeer EcoCenter project. Draghia submitted these proposals to the general contractor of the project via email, copying Defendant. At all times Defendant and Draghia knowingly and deliberately concealed and failed to disclose their kickback agreement to Vermeer employees and officers and the general contractor. This concealment was material. Specifically, the existence of their kickback agreement was material to the scheme to defraud Vermeer because if Vermeer officials had known about the kickback agreement, Draghia Contracting would not have been awarded a contract for work at Vermeer.

(g) The general contractor worked for the customer—that is, Vermeer. The general contractor on the EcoCenter project reported directly to Defendant, who was Vermeer's Director of Construction. Defendant had significant influence over what company would work as general contractor. On May 29, 2019, Defendant inquired with the EcoCenter project general contractor whether the general contractor was sub-contracting out the masonry work. The general contractor told Defendant that the mason work would be contracted out and that the general contractor had already received two bids for that work, but would be open to looking at another bid. In response, Defendant told the general contractor that Defendant would prefer to use "my guy". On July 7, 2019, Draghia submitted a bid to the general contractor via email, copying Defendant. This original bid by Draghia was for $829,590. The general contractor then reminded Defendant via email that it had received the two earlier bids for that work—bids that were for $573,527 and $641,437. Defendant told the general contractor that "I feel confident that this is the Vendor [Draghia Contracting] we want to do that block work". Defendant sought to allay the concerns of the general contractor and justify Draghia's bid by asserting the other bids were unrealistic, that Draghia would get it done timely because

Draghia Contracting and Viorel Draghia would then pay monetary kickbacks to Defendant. Defendant and Draghia used interstate wire communications in furtherance of the scheme to defraud Vermeer.

4

      he had the necessary manpower, and that Draghia did quality work. This was a misrepresentation in that Defendant knew, at minimum, that Draghia did not have laborers who would do the work but that Draghia would instead "re-subcontract" the work out to another company to do the labor. And Defendant omitted from his justification that a reason Defendant wanted Draghia to be awarded the work was so that Draghia could then pay Defendant a kickback. Defendant told the general contractor that Defendant and the general contractor would negotiate with Draghia as Defendant stated, "this proposal [$829,590] looks a little high to me." Defendant asked Draghia to bring his bid down to around $800,000. On July 10, 2019, Draghia emailed the general contractor, copying Defendant, a revised bid for $800,555. On July 17, 2019, Defendant sent an email to the general contractor directing him to give the job to Draghia "all in" at $790,000. Draghia Contracting was then awarded a contract for masonry-related work on the Vermeer EcoCenter. The initial contract amount agreed upon was for $790,000, but the amount was immediately revised upward to $800,555. Draghia Contracting labor did not do the work covered by the initial contract. Instead, Draghia Contracting "re-subcontracted" with a masonry company located in Central Iowa that agreed to complete the work within the scope of the initial contract for $572,409.

(h)    Additional construction work at the Vermeer campus, both on the Vermeer EcoCenter and a separate project, was awarded to Draghia Contracting between July and October 2019.

(i)    The various proposals submitted by Viorel Draghia and contracts issued to Draghia Contracting from July through October 2019 were transmitted via email. During that time Draghia, via email, submitted invoices seeking payment for work completed under the contracts. As a result, Draghia received payments for work completed. The above-referenced emails were all interstate wire communications in furtherance of the scheme to defraud Vermeer.

(j)    On multiple different dates during the summer and fall of 2019, Viorel Draghia paid kickbacks to Defendant for the Vermeer construction work that had been awarded to Draghia Contracting. These kickback payments included multiple checks payable from a checking account in the name of "Viorel

5

    Draghia DBA Draghia Painting & Contracting Co." and said checks were made payable to "Paul Bradford". Defendant knowingly and deliberately concealed and failed to disclose the payment of these kickbacks from Vermeer and the general contractor for the Vermeer EcoCenter project.

(k) Defendant further stipulates, in accepting his responsibility, to the following:

  (i) On June 25, 2020, Special Agents with the Federal Bureau of Investigation spoke with Defendant at his place of work in Maryland. FBI Special Agent Kevin Kohler led this interview and identified himself at the onset of the interview as being an FBI agent based out of Iowa. During the interview Defendant repeatedly stated that there were no kickbacks paid to Defendant in relation to the Vermeer construction project or any other construction project, specifically including the LG Corporation project in Clarksville, Tennessee and the Aberdeen Proving Grounds project in Aberdeen, Maryland. These were false statements and Defendant knew them to be false. Agent Kohler showed Defendant several checks payable from Draghia Contracting to Defendant. Defendant knowingly gave false explanations as to the purpose of the payments.

  (ii) After the FBI agents departed from Defendant's place of employment on June 25, Defendant contacted Viorel Draghia and requested that they urgently meet. Defendant and Draghia met at a Starbucks in Northern Virginia the afternoon of June 25. The FBI surveilled and covertly audio-recorded the meeting. At the Starbucks, Defendant told Draghia about the meeting that Defendant had with the FBI earlier that day and some of the information that the FBI confronted Defendant with. Defendant told Draghia that the FBI was probably on the way to Draghia's house to interview Draghia. Defendant told Draghia that Defendant had denied to the FBI that Defendant had ever received a kickback from Draghia. Defendant repeatedly told Draghia several explanations— each of which were false—that they should use to explain away the checks payable from Draghia Contracting to Defendant. Defendant implored Draghia to not cooperate with the investigators and not "flip" against Defendant.

Among other things, Defendant stated:
- "As long as we stick together, we will be OK."
- "Do not talk to them [FBI]. Do not invite them in."
- Defendant told Draghia that there is no way his friend [Draghia] was going to get on the witness stand and admit to something that could put him in prison for decades. Defendant stated, "It is insanity. Don't do it. Don't flip."
- "The only way they can tie it back is if you and I flip. And neither one of us are going to do that to each other."
- "You don't want to talk to the FBI. No one that has ever talked to the FBI has done any good."
- "You don't want to lie about the things they [FBI] got." "They [FBI] got the money. So what? That's not the crime. What's a crime is a kickback or tax evasion. That's the crime."
- As long as we stick together, "we won't have to answer questions unless they charge us and take us to court and that's a year and a half away by the time it winds its way. Even if that happens, by that time you and I will have a rock-solid case."
- Defendant told Draghia they need to tell their lawyers that these were consulting payments so their stories are consistent. Defendant re-iterated the importance of their stories matching.
- Moments before they departed the Starbucks, Defendant stated to Draghia "don't say a word to him [the FBI agent]." Defendant told Draghia to "look me in the eye" followed by the following exchange:
    - Defendant: "Can I trust you?"
    - Draghia: "Yes"
    - Defendant: "Do you really love me as a brother?"
    - Draghia: "Yes, sir."
    - Defendant: "Promise?"
    - Draghia: "Promise."
    - Defendant: "Forever?"
    - Draghia: "OK."

8. <u>Truthfulness of Factual Basis</u>. Defendant acknowledges that the above statements are true. Defendant understands that, during the change of plea hearing, the judge and the prosecutor may ask Defendant questions under oath about

7

the offense to which Defendant is pleading guilty, in the presence of Defendant's attorney. Defendant understands that Defendant must answer these questions truthfully, and that Defendant can be prosecuted for perjury if Defendant gives any false answers.

9. <u>Waiver of Rule 410 Rights</u>. The Defendant expressly waives Defendant's rights under Rule 410 of the Federal Rules of Evidence and agrees that all factual statements made in this plea agreement, including under the Factual Basis, are admissible against the Defendant. Should Defendant fail to plead guilty pursuant to this plea agreement or move to withdraw his plea or to set aside Defendant's conviction, then these admissions may be used against Defendant in the Government's case-in-chief and otherwise, including during the continuing prosecution of this case.

10. <u>Venue</u>. Defendant agrees that venue for this case is proper for the United States District Court for the Southern District of Iowa.

**D.  SENTENCING**

11. <u>Sentencing Guidelines</u>. Defendant understands that Defendant's sentence will be determined by the Court after considering the advisory United States Sentencing Guidelines, together with other factors set forth by law. The Sentencing Guidelines establish a sentencing range based upon factors determined to be present in the case, which include, but are not limited to the following:

    (a)    The nature of the offense to which Defendant is pleading guilty;

    (b)    The amount of money and "loss" involved in the offense, with the

  parties stipulating as a recommendation to the District Court that the "loss" exceeded $15,000 for purposes of USSG §2B1.1(b)(1) with the extent to which the "loss" exceeded $15,000 to be determined by the District Court;

(c) Whether sophisticated means were used to commit all or part of the offenses, with the parties stipulating as a recommendation to the District Court that an upward adjustment should not be applied under USSG §2B1.1(b)(10)(C);

(d) Defendant's role in the offense, with the parties stipulating as a recommendation to the District Court that neither an upward nor downward adjustment should be applied under USSG §3B1.1 and §3B1.2;

(e) Whether Defendant abused a position of public or private trust in a manner that significantly facilitated the commission or concealment of the offense, with the parties stipulating as a recommendation to the District Court that a two-level upward adjustment should be applied under USSG §3B1.3;

(f) Whether Defendant attempted to obstruct justice in the investigation or prosecution of the offense, with the parties stipulating as a recommendation to the District Court that a two-level upward adjustment should be applied under USSG §3C1.1;

(g) The nature and extent of Defendant's criminal history (prior convictions); and

(h) Acceptance or lack of acceptance of responsibility.

Defendant understands that, under some circumstances, the Court may "depart" or "vary" from the Sentencing Guidelines and impose a sentence more severe or less severe than provided by the guidelines, up to the maximum in the statute of conviction. Defendant has discussed the Sentencing Guidelines with Defendant's attorney.

  12. <u>Acceptance of Responsibility</u>. The Government agrees as a

recommendation to the District Court that Defendant receive credit for acceptance of responsibility under USSG §3E1.1(a). The Government reserves the right to oppose a reduction under §3E1.1(a) if after the plea proceeding Defendant obstructs justice, fails to cooperate fully and truthfully with the United States Probation Office, attempts to withdraw Defendant's plea, or otherwise fails to clearly demonstrate acceptance of responsibility. If Defendant qualifies for a decrease under § 3E1.1(a), and the base offense level is 16 or above, as determined by the Court, the Government agrees to make a motion to the District Court that Defendant should receive an additional 1-level reduction under USSG §3E1.1(b), based on timely notification to the Government of Defendant's intent to plead guilty. The government may withhold this motion based on any interest identified in USSG § 3E1.1.

13. <u>Presentence Report</u>. Defendant understands that the Court may defer a decision as to whether to accept this Plea Agreement until after a Presentence Report has been prepared by the United States Probation Office, and after Defendant's attorney and the Government have had an opportunity to review and challenge the Presentence Report. The parties are free to provide all relevant information to the Probation Office for use in preparing a Presentence Report.

14. <u>Disclosure of Presentence Investigation Reports</u>. The United States District Court for the Southern District of Iowa has issued the following Administrative Order:

> The presentence investigation report is a sealed and confidential document. Unless specifically authorized by the district court, a defendant may not disseminate, disclose, or distribute a presentence investigation report, or any

part or page of a presentence investigation report, in either draft or final form. A defendant who violates this order, may be subject to prosecution for contempt of court under 18 U.S.C. § 401(3). This order does not apply to a defendant's review of a presentence investigation report with the defendant's own attorney.

Defendant acknowledges and understands this order.

15. <u>Evidence at Sentencing</u>.  The parties may make whatever comment and evidentiary offer they deem appropriate at the time of sentencing and entry of plea, provided that such offer or comment does not violate any other provision of this Plea Agreement.  Nothing in this Plea Agreement restricts the right of Defendant or any victim to make an allocution statement, to the extent permitted under the Federal Rules of Criminal Procedure, nor does this Plea Agreement convey any rights to appear at proceedings or make statements that do not otherwise exist.

16. <u>Sentence to be Decided by Judge -- No Promises</u>.  This Plea Agreement is entered pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure.  Defendant understands that the final sentence, including the application of the Sentencing Guidelines and any upward or downward departures, is within the sole discretion of the sentencing judge, and that the sentencing judge is not required to accept any factual or legal stipulations agreed to by the parties.  Any estimate of the possible sentence to be imposed, by a defense attorney or the Government, is only a prediction, and not a promise, and is not binding.  Therefore, it is uncertain at this time what Defendant's actual sentence will be.

17. <u>No Right to Withdraw Plea</u>.  Defendant understands that Defendant will have no right to withdraw Defendant's plea if the sentence imposed, or the

application of the Sentencing Guidelines, is other than what Defendant anticipated, or if the sentencing judge declines to follow the parties' recommendations.

**E.     FINES, COSTS, AND RESTITUTION**

18.    <u>Fines and Costs</u>.   Issues relating to fines and/or costs of incarceration are not dealt with in this agreement, and the parties are free to espouse their respective positions at sentencing.

19.    <u>Special Assessment</u>.   Defendant agrees to pay the mandatory special assessment of $100 per count of conviction at or before the time of sentencing, as required by 18 U.S.C. § 3013.

20.    <u>Restitution</u>.   Defendant agrees that the Court should impose an order of restitution for all relevant conduct in an amount to be determined by the Court; that such order of restitution shall be due and payable immediately; and that if Defendant is not able to make full payment immediately, Defendant shall cooperate with the United States Probation Office in establishing an appropriate payment plan, which shall be subject to the approval of the Court, and thereafter in making the required payments.   Any such payment plan does not preclude the Government from utilizing any collections procedures pursuant to the Federal Debt Collections Act and including the Treasury offset program.

21.    <u>Financial Statement</u>.   Defendant agrees to complete truthfully and in full a financial statement provided by the U.S. Attorney's Office, and return the financial statement to the U.S. Attorney's Office within 30 days of the filing of this Plea Agreement.

## F.  LIMITED SCOPE OF AGREEMENT

22.  <u>Limited Scope of Agreement</u>.  This Plea Agreement does not limit, in any way, the right or ability of the Government to investigate or prosecute Defendant for crimes occurring outside the scope of this Plea Agreement.  Additionally, this Plea Agreement does not preclude the Government from pursuing any civil or administrative matters against Defendant, including, but not limited to, civil tax matters and civil forfeiture which arise from, or are related to, the facts upon which this investigation is based.

23.  <u>Agreement Limited to Southern District of Iowa</u>.  This Plea Agreement is limited to the United States Attorney's Office for the Southern District of Iowa, and cannot bind any other federal, state or local prosecuting, administrative, or regulatory authorities.

24.  <u>Vermeer Corporation not a party to this Agreement</u>.  Defendant understands that Vermeer Corporation is not a party to this Plea Agreement, and that the "loss" and "restitution" amounts applicable to this criminal case do not resolve any claims that Vermeer Corporation may have against Defendant. Defendant understands that Vermeer Corporation remains free to pursue all lawful civil remedies it may deem appropriate.

## G.  WAIVER OF TRIAL, APPEAL AND POST-CONVICTION RIGHTS

25.  <u>Trial Rights Explained</u>.  Defendant understands that this guilty plea waives the right to:

(a)  Continue to plead not guilty and require the Government to prove

        the elements of the crime beyond a reasonable doubt;

(b)      A speedy and public trial by jury, which must unanimously find Defendant guilty before there can be a conviction;

(c)      The assistance of an attorney at all stages of trial and related proceedings, to be paid at Government expense if Defendant cannot afford to hire an attorney;

(d)      Confront and cross-examine adverse witnesses;

(e)      Present evidence and to have witnesses testify on behalf of Defendant, including having the court issue subpoenas to compel witnesses to testify on Defendant's behalf;

(f)      Not testify or have any adverse inferences drawn from the failure to testify (although Defendant also has the right to testify, if Defendant so chooses); and

(g)      If Defendant is convicted, the right to appeal, with the assistance of an attorney, to be paid at Government expense if Defendant cannot afford to hire an attorney.

26.     <u>Waiver of Appeal and Post-Conviction Review</u>. Defendant knowingly and expressly waives any and all rights to appeal Defendant's conviction in this case, including a waiver of all motions, defenses and objections which Defendant could assert to the charge, or to the Court's entry of judgment against Defendant; except that both Defendant and the United States preserve the right to appeal any sentence imposed by the Court, to the extent that an appeal is authorized by law. Also, Defendant knowingly and expressly waives any and all rights to contest Defendant's conviction and sentence in any post-conviction proceedings, including any proceedings under 28 U.S.C. § 2255. These waivers are full and complete, except that they do not extend to the right to appeal or seek post-conviction relief based on

grounds of ineffective assistance of counsel or prosecutorial misconduct.

## H.   VOLUNTARINESS OF PLEA AND OPPORTUNITY TO CONSULT WITH COUNSEL

27.   <u>Voluntariness of Plea</u>.   Defendant represents that Defendant's decision to plead guilty is Defendant's own, voluntary decision, and that the following is true:

    (a)   Defendant has had a full opportunity to discuss all the facts and circumstances of this case with Defendant's attorney, and Defendant has a clear understanding of the charges and the consequences of this plea, including the maximum penalties provided by law.

    (b)   No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this written agreement.

    (c)   No one has threatened Defendant or Defendant's family to induce this guilty plea.

    (d)   Defendant is pleading guilty because in truth and in fact Defendant is guilty and for no other reason.

28.   <u>Consultation with Attorney</u>.   Defendant has discussed this case and this plea with Defendant's attorney and states that the following is true:

    (a)   Defendant states that Defendant is satisfied with the representation provided by Defendant's attorney.

    (b)   Defendant has no complaint about the time or attention Defendant's attorney has devoted to this case nor the advice the attorney has given.

    (c)   Although Defendant's attorney has given Defendant advice on this guilty plea, the decision to plead guilty is Defendant's own decision.   Defendant's decision to enter this plea was made after full and careful thought, with the advice of Defendant's attorney, and with a full understanding of Defendant's rights, the facts and circumstances of the case, and the consequences of the plea.

**I.     GENERAL PROVISIONS**

29.     <u>Entire Agreement</u>.  This Plea Agreement, and any attachments, is the entire agreement between the parties.  Any modifications to this Plea Agreement must be <u>in writing</u> and signed by all parties.

30.     <u>Public Interest</u>.  The parties state this Plea Agreement is in the public interest and it takes into account the benefit to the public of a prompt and certain disposition of the case and furnishes adequate protection to the public interest and is in keeping with the gravity of the offense and promotes respect for the law.

31.     <u>Execution/Effective Date</u>.  This Plea Agreement does not become valid and binding until executed by each of the individuals (or their designated representatives) shown below.

**J.     SIGNATURES**

32.     <u>Defendant</u>.  I have read all of this Plea Agreement and have discussed it with my attorney.  I fully understand the Plea Agreement and accept and agree to it without reservation.  I do this voluntarily and of my own free will.  No promises have been made to me other than the promises in this Plea Agreement.  I have not been threatened in any way to get me to enter into this Plea Agreement.  I am satisfied with the services of my attorney with regard to this Plea Agreement and other matters associated with this case.  I am entering into this Plea Agreement and will enter my plea of guilty under this Agreement because I committed the crime to which I am pleading guilty.  I know that I may ask my attorney and the judge any

questions about this Plea Agreement, and about the rights that I am giving up, before entering into the plea of guilty.

9/23/2022
Date

ROGER PAUL BRADFORD

33. <u>Defendant's Attorney</u>.  I have read this Plea Agreement and have discussed it in its entirety with my client.  There is no Plea Agreement other than the agreement set forth in this writing.  My client fully understands this Plea Agreement.  I am satisfied my client is capable of entering into this Plea Agreement, and does so voluntarily of Defendant's own free will, with full knowledge of Defendant's legal rights, and without any coercion or compulsion.  I have had full access to the Government's discovery materials, and I believe there is a factual basis for the plea.  I concur with my client entering into this Plea Agreement and in entering a plea of guilty pursuant to the Plea Agreement.

09/23/2022
Date

Guy R. Cook
Attorney for Roger Paul Bradford

Grefe & Sidney, P.L.C.
500 E. Court Ave., Suite 200
Des Moines, Iowa   50309
Telephone:  (515) 245-4300
Telefax:  (515) 245-4452
E-Mail: gcook@grefesidney.com

34. <u>United States</u>.  The Government agrees to the terms of this Plea Agreement.

                                                      Richard D. Westphal
                                                     United States Attorney

_9/23/2022_        By: _[signature]_
Date

                                                       Adam J. Kerndt
                                                       Assistant U.S. Attorney
                                                       U.S. Courthouse Annex, Suite 286
                                                       110 East Court Avenue
                                                       Des Moines, Iowa 50309
                                                       Telephone:  515-473-9300
                                                       Telefax:  515-473-9292
                                                       E-mail: Adam.Kerndt@usdoj.gov